**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

| | | |
|---|---|---|
| NICKY R. BERCAW, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | 1:07-cv-876-SEB-TAB |
| | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| of the Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY DISCUSSING COMPLAINT FOR JUDICIAL REVIEW**

Nicky R. Bercaw ("Bercaw") seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"), 42 U.S.C. § 301, *et seq.*

For the reasons explained in this Entry, the Commissioner's decision must be **remanded for further proceedings.**

## I. BACKGROUND

Bercaw filed applications for SSI and DIB on April 23, 2004, alleging an onset date of disability of May 15, 2001. Her applications were denied initially and upon reconsideration. Her request for a hearing before an Administrative Law Judge ("ALJ") was granted. A hearing was conducted on June 14, 2006. Bercaw was present, accompanied by her attorney. Medical and other records were introduced into evidence, and Bercaw, her mother, and a vocational expert testified at the hearing. The ALJ issued a decision on November 22, 2006, denying benefits. On May 4, 2007, the Appeals Council denied Bercaw's request for review, making the ALJ's decision final, *see Luna v. Shalala,* 22 F.3d 687, 689 (7th Cir. 1994), and this action for judicial review of the ALJ's decision followed. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

The ALJ's decision included the following findings: (1) Bercaw met the nondisability requirements of the Act for DIB and was insured for benefits through the date of the ALJ's decision; (2) Bercaw had not sustained substantial gainful activity since the alleged onset of disability; (3) Bercaw's obesity, back problems, bipolar disorder and an anxiety disorder with panic attacks were considered "severe" based on the requirements in the regulations; (4) these medically determinable impairments did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4; (5) Bercaw's allegations regarding her limitations were not totally credible for the reasons set forth in the body of the decision; (6) Bercaw had the following residual functional capacity ("RFC"): light work with only occasional bending, squatting, kneeling, stooping, and crawling, and she must be allowed to alternate between sitting and standing 5 minutes per hour without leaving her work station, and she could have only superficial interaction with the public, coworkers, and supervisors; (7) Bercaw was unable to perform any past relevant work; (8) Bercaw was a younger individual between the ages of 18 and 44, she had a high school education and she had no transferable work skills; (9) Bercaw had the RFC to perform a significant range of light work; and (10) although Bercaw's exertional limitations did not allow her to perform the full range of light work, using Medical-Vocational Rule 202.21 as a framework for decision-making, there were a significant number of jobs in the national economy that she could perform. With these findings in hand, and through the application of applicable rules and regulations, the ALJ concluded that Bercaw was not under a "disability," as defined in the Act, at any time through the date of the ALJ's decision.

## II.  DISCUSSION

### A.  Applicable Law

To be eligible for DIB and SSI, a claimant must prove she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).  To establish disability, the plaintiff is required to present medical evidence of an impairment that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." 20 C.F.R. §§ 416.908; 404.1508.

A five-step inquiry outlined in Social Security regulations is used to determine disability status. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005).

The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or  combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his

past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520, 416.920. A finding of disability requires an affirmative answer at either step three or step five.

*Id.* The claimant bears the burden of proof at steps one through four, and at step five the burden shifts to the Commissioner. *Id.* at 352.

The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993). "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)).

## B.   Analysis

In this case, the ALJ determined that Bercaw had severe impairments but that she was not disabled because she could perform a significant number of light jobs. Bercaw argues that the ALJ's decision is not supported by substantial evidence.

Bercaw first asserts that the ALJ failed to evaluate the opinions of her mental health therapists and treating mental health doctors. She contends that in July 2004, psychiatrist Dr. Sabet opined that Bercaw was impaired in her ability to meet and work with the public, she had a tendency for multiple errors due to lack of focus, anxiety and mental confusion, and she had increased anxiety and agitation when there was pressure to perform and/or meet deadlines, resulting in tardiness and absenteeism. (R. at 202). Bercaw acknowledges that the ALJ limited her to superficial interaction with the public, co-workers and supervisors, but argues that the ALJ failed to mention any of the other limitations found by her treating mental health providers. The Commissioner responds that the July 2004 report did not constitute a medical source opinion that the ALJ was required to address.

Bercaw also argues that the ALJ selectively reviewed the evidence regarding the degree of her mental limitations.  She contends that her mental impairments were episodic and her symptoms were serious for significant periods of time. Bercaw's claims overlap, and therefore, they will be addressed at the same time.

The court need not consider whether the July 2004 mental health report constituted a medical source opinion because the ALJ did, in fact, refer to the July 2004 exhibit. (R. at 19, citing Ex. IF55).  In an apparent summary of the report, the ALJ noted that Bercaw had been treated with medication and therapy for mental problems, but she had dropped out of individual therapy in the past and had not been fully compliant with medication recommendations. (R. at 19). Although these conclusions do not misstate the July 2004 report, they do not go far enough. (R. at 202-03). Bercaw correctly points to the same

3

treatment report which indicates that Bercaw had a tendency to make multiple errors due to lack of focus, anxiety and mental confusion, and that she experienced increased anxiety and agitation when there was pressure to perform, resulting in tardiness and absenteeism. (R. at 202). She experienced significant problems with concentration and ability to focus on completing tasks at home and with school work. *Id.* She reported feelings of paranoia and she heard voices inside her head. *Id.* The ALJ did not discuss any of these findings.

Bercaw contends that the ALJ also selectively reviewed the evidence relative to her ability to perform daily activities. The ALJ determined that Bercaw displayed mild to moderate limitations in her ability to perform mental activities of daily living. (R. at 19-20). In support of this conclusion, the ALJ noted that despite her mental impairments, Bercaw was able to participate in part time employment, attend to her ill husband, attend to her children, attend to her cat, attend to her own personal needs, perform household tasks necessary to raise two children, and drive an automobile. (R. at 19). The ALJ also noted that Bercaw had been able to attend classes within the past few years. *Id.* The ALJ failed to discuss *any* of the evidence that indicated that Bercaw had difficulties in performing these activities. Bercaw points to evidence showing that she became easily overwhelmed with her children, her mother and mother-in-law often helped watch the children when Bercaw stayed in bed depressed, she had difficulty at school with worry and panic, she had problems concentrating while reading and needed a tutor at school, she lacked energy and motivation to do many things, she needed to rest for a few hours between daily activities, she missed school for a week due to medicine side effects, she felt depressed and sometimes stayed in bed all day, and she had anxiety attacks when she drove to new places or at night or in bad weather. The record shows also that Bercaw ultimately failed all of her college classes and had to drop out of school because she could not handle them. The ALJ did not grapple with any of this evidence.

Along the same lines, Bercaw contends that the ALJ selectively reviewed the evidence relative to her social functioning. The ALJ concluded that Bercaw had mild to moderate limitations in this area. (R. at 20). He reasoned that she was able to relate well to her immediate family members and she did not engage in socially disruptive behavior at work. He concluded that she behaved well enough while around her employer and customers to sustain her part time job. *Id.* The ALJ failed to discuss the reports that Bercaw had no friends, she sometimes would yell at relatives and not talk to them for a while, she was sometimes extremely irritable and physically aggressive with her husband, that she sometimes had panic attacks in social situations and she was sometimes paranoid that someone was following her.

Bercaw correctly points out that the vocational expert opined that no job would allow more than 12 to 14 days absence a year for personal or sick leave. Although Bercaw certainly has had times when she has accomplished a great deal despite her impairments, there are many documented instances in which she has not been successful in managing her responsibilities. She has required regular assistance from her mother and mother-in-law and has had to drop out of school because she could not keep up with the work. Her symptoms of anxiety, panic and depression are reflected by the treatment notes, however,

the ALJ did not discuss that line of evidence.

The court agrees that the ALJ did not grapple with the issue of Bercaw's episodic bipolar disorder and depression. The ALJ did not recite any of the GAF scores assigned by treating mental health medical providers. The range of the GAF scores assigned throughout the record reflect the episodic nature of her bipolar disorder and indicated that her symptoms were often in the serious range instead of the mild to moderate range. By failing to discuss the evidence that did not support his ultimate conclusion, the ALJ did not acknowledge the periods of time during which Bercaw experienced serious limitations in her ability to function.

Of great significance is that for a record containing over 700 pages, the ALJ cited to only *two pages* of the record in his decision. (R. at 19, citing E74 and 1F55). Although the number of pages cited by an ALJ is not dispositive in any case, in this case the court's inability to trace the ALJ's reasoning from the evidence to his RFC assessment is starkly illuminated by that fact. The ALJ did not discuss with any specificity the symptoms and functional limitations Bercaw reported in relation to her mental impairments, nor did he discuss any of the corroborating evidence. An ALJ may not select and discuss only evidence which favors his ultimate conclusion. *Smith v. Apfel*, 231 F.3d 433, 438 (7th Cir. 2000); *Clifford v. Apfel*, 227 F.3d 863, 871 (7th Cir. 200); *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

Even if the entire record could be discussed and weighed in a way that would support the ALJ's ultimate finding, the court cannot make that determination in the first instance. The court cannot resolve conflicts in or reweigh the evidence. *Diaz v. Chater,* 55 F.3d 300, 305 (7th Cir. 1995) ("We cannot substitute our own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled."). In addition, the Commissioner's *post hoc* rationalizations for the ALJ's findings are not helpful. *See Golembiewski v. Barnhart*, 322 F.3d 912, 916 (7th Cir. 2003) ("general principles of administrative law preclude the Commissioner's lawyers from advancing grounds in support of the agency's decision that were not given by the ALJ").

Under these circumstances, the court cannot be confident that the ALJ considered the important evidence of record, nor can it trace the path of the ALJ's reasoning. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Hickman v. Apfel,* 187 F.3d 683, 689 (7th Cir. 1999) (an ALJ must "sufficiently articulate his assessment of the evidence to assure us that [he] considered the important evidence . . . [and to enable] us to trace the path of [his] reasoning.") (internal quotation omitted). Accordingly, the court cannot find that substantial evidence supports the ALJ's finding that Bercaw was not eligible for DIB and SSI.

## III. CONCLUSION

For the reasons discussed in this Entry, the ALJ's conclusions are not supported by substantial evidence and the court is required to **remand** the case to the ALJ for further consideration. *Melkonyan v. Sullivan,* 501 U.S. 89, 98 (1991) (a court may remand the case after passing on its merits and issuing a judgment affirming, modifying, or reversing the Commissioner's decision, a "sentence four" remand).  Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 08/27/2008

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana